IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRIGNIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| AND COMMONWEALTH OF VIRGINIA, ) | |
| *ex rel.* DWIGHT OLDHAM, ) | |
| ) | |
| Relator, ) | |
| v. ) | Civil Action No. 6:18-cv-00088-NKM |
| ) | |
| CENTRA HEALTH, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF CENTRA'S MOTION TO DISMISS
DR. OLDHAM'S AMENDED COMPLAINT**

Defendant Centra Health, Inc. ("Centra"), by counsel, hereby submits this Memorandum in Support of its Motion to Dismiss Plaintiff Dwight Oldham's ("Dr. Oldham") Amended Complaint (Doc. 19) ("AC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.    INTRODUCTION**

On November 21, 2018, Dr. Oldham filed his original qui tam Complaint against Centra alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code §§ 8.01-216.1 et seq., based on purportedly anomalous breast imaging statistics (Doc. 1).  On January 29, 2020, the United States and the Commonwealth of Virginia filed Notices of Election to Decline Intervention (Doc. 9 & 10).

The Government's decision was prudent.  Dr. Oldham's whistleblower claims were meritless and contrary to law.  Dr. Oldham could not meet his burden of proving objective falsity or the occurrence of an underlying alleged contractual, regulatory or statutory violation.  *See United States v. AseraCare, Inc.*, 938 F.3d 1278, 1296 (11th Cir. 2019) (explaining that a "claim cannot be 'false' - and thus trigger FCA liability" unless it reflects an "objective falsehood").

Dr. Oldham should have known this before filing. Federal courts routinely dismiss FCA claims like this based on differences of opinion between physicians observing that the FCA should not become a "federal malpractice statute" used to question health care providers' judgment.

- *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980 (10th Cir. 2005) (concluding that whether medical care provided to premature infant was "therapeutic" or "custodial" was an ambiguous standard that called for a scientific opinion that could not be the basis of an objective falsehood);

- *United States ex rel. Hilliard v. Hardin House Inc.*, 2020 WL 362796 (N.D. Ill. Jan. 22, 2020) (dismissing complaint for failure to contain "medical, technical, or scientific context" showing why defendant's substance abuse testing protocol was not reasonable or necessary);

- *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 2016 WL 3449833 (N.D. Tex. June 20, 2016) (ruling that physician certifications could not be proved false based on another physician's differing opinion);

- *United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 703 (N.D. Ill. 2012) (dismissing allegation that did not include facts showing that "the certifying physician did not or could not have believed, based on his clinical judgment, that the patient was eligible" for hospice);

- *United States ex rel. Phillips v. Permian Residential Care Ctr.*, 386 F. Supp. 2d 879, 884 (W.D. Tex. 2005) (noting that the FCA should not be "used to call into question a health care provider's judgment regarding a specific course of treatment" and that courts have limited the FCA to keep it "from becoming a federal malpractice statute");

- *United States ex rel. Lutz v, Lab. Corp. of Am. Holdings*, 2019 WL 236799 (D.S.C. Jan. 16, 2019) (dismissing medically unnecessary testing claim where the decision of which test to request was left to the ordering physician);

- *United States ex rel. Ribik v. HCR ManorCare, Inc.*, No (slip op.) (E.D. Va. Nov. 6, 2017) (ruling that government's expert's testimony on necessity was inadmissible because she was unqualified and "she did not personally examine any of the . . . patients");

- *United States ex rel. Zverev v. USA Vein Clinics of Chicago, LLC*, 2017 WL 1148468 (N.D. Ill. Mar. 27, 2017) (finding insufficient allegation that ultrasound technicians recommended surgery "at a significantly higher rate than would be expected" without information identifying which procedures were fraudulent due to lack of medical necessity);

- *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489 (3d Cir. 2017) (finding that "doctors are best suited to evaluate each patient and determine whether a treatment is 'reasonable and necessary for [that] individual patient'").

Having abandoned his meritless whistleblower claims based on purportedly anomalous breast imaging statistics, Dr. Oldham now purports to assert federal and state retaliation claims (Counts 1 and 2) and a breach of contract claim (Count 3) against Centra despite not engaging in protected activity, not having an employment relationship with Centra, and not being a party to or intended third party beneficiary of the contract between Centra and Lynchburg Hematology Oncology Clinic ("LHOC"). See AC at ¶¶ 31, 79, Ex. 1.

Dr. Oldham's federal and state retaliation claims (Counts 1 and 2) fail because he has not plausibly alleged that: (1) he engaged in protected activity, (2) Centra knew about the activity, or (3) Centra took adverse employment action against him as a result. Dr. Oldham's allegations do not establish that he engaged in protected activity, much less that anyone at Centra knew that he was fall well short of the applicable pleading requirements.

Dr. Oldham's sole assertion of protected activity is that, during the course of a single isolated conversation with LHOC's Direct of Practice Operations Katie Kirby ("Ms. Kirby") on November 23, 2017, he allegedly told Ms. Kirby "that Centra was continuing a pattern of over-utilization and refusing to implement clinical pathways or effective case management procedures" and that he was preparing unspecified "complaints" which he hoped "would lead to the replacement of Mr. Tibbs, Mr. Baker, and Ms. Riggins." AC at ¶ 85.

By his own admission, Dr. Oldham merely claims to have expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced preparing unspecified "complaints" on November 23, 2017. *Id.* Dr. Oldham never communicated or reported what he believed to be "concerns about Centra's illegal billing activities" until he sent "a December 5, 2017 email to the chair of the Centra Board of Directors, Walker Syndor" over a week after he was banned "from setting foot at any Centra facilities" on November 28, 2017. *Id.* at ¶¶ 85-88. Ironically, it was Dr.

Oldham who sent his December 5, 2017 email in retaliation for having been asked to leave Centra premises due to his threatening and inappropriate behavior. *Id.*

In any event, even setting aside the fact that he was the retaliator, Dr. Oldham's generalized opinion regarding "cost savings" and treatment patterns, his unspecified "complaints" and his apparent desire to replace Centra executives fall well short of "protected conduct" that could give rise to a federal or state retaliation claim. *Id.* At most, they amount to oblique and generalized expressions of frustration and dissatisfaction with Centra which cannot support a retaliation claim.

Dr. Oldham's breach of contract claim (Count 3) likewise fails because he is neither a party to nor an intended beneficiary of and has no rights under the Professional Services Agreement ("PSA") between Centra and LHOC. See AC at ¶¶ 31, Ex. 1. The language of the PSA and applicable Virginia law confirms this. Dr. Oldham saying otherwise does not make it so.

As a result, just like his meritless whistleblower claims that were deemed unfit for Government intervention (Doc. 9 & 10) and ripe for abandonment (Doc. 19), Dr. Oldham's remaining claims asserted in his AC fail as a matter of law and should be dismissed with prejudice.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   Dr. Oldham Relies on Purportedly Anomalous Breast Imaging Statistics.

Dr. Oldham is unable to point to any specific instances of wrongdoing, fraud, or false claims submitted to the Government by Centra. Instead, he alleges fraud based on purportedly anomalous breast imaging statistics. See, e.g., AC at ¶ 58 ("The national average for the use of breast MRI after cancer diagnosis is one in three. Centra's was 74% in 2016."). This is clearly insufficient to show objective falsity in a medical necessity case. See *supra* p. 2 (collecting cases).

The apparent basis for Dr. Oldham's now abandoned FCA violations is that Centra's rate of ordering MRIs after cancer diagnoses surpassed the national rate and generally over-utilized

4

breast ultrasound testing for women with dense breasts. AC at ¶¶ 40-63. Given that Dr. Oldham's allegations are devoid of specifics, it is unsurprising and appropriate that the United States and the Commonwealth of Virginia both declined to intervene (Doc. 9 & 10) and Dr. Oldham abandoned his claims (Doc. 19). Dr. Oldham's allegations simply cannot support claims that Centra has engaged in fraud or other wrongdoing. At most, they could be construed to suggest that Centra's MRI imaging of breast cancer patients surpassed national averages and that Dr. Oldham disagreed with the internal processes used by Centra to diagnose and treat breast cancer. Again, federal courts routinely reject FCA claims based on differences of opinion between physicians because the FCA should not become a "federal malpractice statute" used to question health care providers' judgment. See *supra* p. 2 (collecting cases).

### B. Dr. Oldham Leads Meetings and Centra Implements His Suggestions.

From 2015 to 2017, Dr. Oldham organized, led and participated in regular meetings and discussions regarding Centra's practices concerning breast cancer diagnoses and treatment. Dr. Oldham made suggestions and Centra implemented certain of them. AC at ¶¶ 65, 67, 71.

### C. Dr. Oldham Engages in Threatening and Inappropriate Behavior.

Dr. Oldham concedes that he engaged in inappropriate behavior. "In August 2017, Carol Riggins filed a complaint against Dr. Oldham for disruptive behavior with Centra Human Resources." AC at ¶ 79 Dr. Oldham acknowledges that "he had made unkind remarks about Riggins" and that Centra reprimanded him for it. AC at ¶ 80. Dr. Oldham received a formal "letter of reprimand" from the Centra Medical Staff Executive Committee ("MEC") for his threatening and inappropriate behavior and did not even bother to respond. AC at ¶¶ 79-82.

### D. Dr. Oldham Converses with Ms. Kirby on November 23, 2017.

Dr. Oldham's sole assertion of protected activity is that, during the course of a single isolated conversation on November 23, 2017, he allegedly told Ms. Kirby "that Centra was continuing a pattern of over-utilization and refusing to implement clinical pathways or effective case management procedures" and that he was preparing unspecified "complaints" which he hoped "would lead to the replacement of Mr. Tibbs, Mr. Baker, and Ms. Riggins." AC at ¶¶ 84-85.

By his own admission, Dr. Oldham merely claims to have expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced preparing unspecified "complaints" on November 23, 2017. *Id.* Dr. Oldham never communicated or reported what he believed to be "concerns about Centra's illegal billing activities" until he sent "a December 5, 2017 email to the chair of the Centra Board of Directors, Walker Syndor" over a week after he was banned "from setting foot at any Centra facilities" on November 28, 2017. *Id.* at ¶¶ 85-88. Ironically, it was Dr. Oldham who sent his December 5, 2017 email in retaliation for having been asked to leave Centra premises due to his threatening and inappropriate behavior. *Id.*

### E. Dr. Oldham is Not a Party to the PSA or a Third-Party Beneficiary.

Oldham worked with LHOC before LHOC merged with Centra in 2014, prior to the PSA. AC at ¶ 25. He claims he was a physician contractor "with Centra" after the 2014 merger but he does not allege or identify that he ever had a contract with Centra. AC at ¶ 25; Count 3. Dr. Oldham served as medical director of LHOC (not Centra) from the 2014 merger until June 2017. AC at ¶ 29; Count 3. He admits that he "**gave up** Medical Director duties, except those specifically related to the Oncology Care Model." AC at ¶ 78 (emphasis added). Dr. Oldham was the President of LHOC and on May 30, 2017, he signed the PSA in that capacity binding LHOC. AC at Ex. 1.

6

During August 2017, Dr. Oldham became aware that Ms. Riggins had filed a complaint against him "for disruptive behavior." Dr. Oldham received a formal "letter of reprimand" for his threatening and inappropriate behavior but did not avail himself of the "grievance procedure" described in Section 8 of the PSA. AC at ¶¶ 79-82. On November 28, 2017, Centra "banned [him] from setting foot at any Centra facilities" due to his "threatening behavior." *Id.* at ¶ 86.

Dr. Oldham claims that Centra is liable to him for its violation of Section 8 of the PSA. AC at Count 3 ¶¶ VIII-IX. He alleges that Section 8 authorized Centra to "terminate a physician" under certain circumstances. *Id.* at Count 3 ¶¶ VIII, IX. He alleges that Section 8 of the PSA authorized Centra to "remove physicians" from serving as medical director or providing clinical services, or to terminate the PSA itself. *Id.* at ¶ 30; Count 3. He alleges that Centra's liability flows to him as a **beneficiary** of the PSA. Compl. Count 3 ¶¶ VIII, IX. He does not allege and cannot show that he is an **intended third party beneficiary** of the PSA.

In Section 18 of the PSA, LHOC and Centra expressly identified and stipulated the beneficiaries not to include Dr. Oldham:

> Case 6:18-cv-00088-NKM   Document 19-1   Filed 08/11/20   Page 3 of 12   Pageid#: 98
>
> **18. Benefit Assignment**
>
> Subject to the provisions herein to the contrary, this Agreement shall inure to the benefits of and be binding upon the Parties hereto and their legal representatives, successors and assigns, provided, however, neither Party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other Party, provided, however, that Centra may assign its rights and obligations under this Agreement, in whole or in part, to Centra Medical Group, LLC or Centra Southside Community Hospital, Inc., or any other affiliate or a wholly-owned subsidiary of Centra, without such consent.

### III. ARGUMENTS AND AUTHORITIES

#### A. Standards Governing Centra's Motion to Dismiss.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." A complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the allegations contained in a plaintiff's complaint must be viewed in the light most favorable to the plaintiff, courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003). Thus, it is appropriate for courts to "disregard any arguments or conclusions of law masquerading as facts," and refuse to "accept … unwarranted deductions of fact, or unreasonable inferences." *United States v. Rosen*, 487 F. Supp. 2d 721, 724 n.4 (E.D. Va. 2007).

Similarly, courts should not accept "conclusory factual allegations devoid of any reference to actual events." *Switzer v. Thomas*, 2013 WL 693090, at *2 (W.D. Va. 2013) (*citing United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)); *see also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Dr. Oldham has failed to satisfy the pleading standard because: (1) his retaliation claims constitute nothing more than the "unadorned, the-defendant-unlawfully-harmed-me accusation" (AC at Counts I & II); and (2) his legal conclusion that he "was a beneficiary of the PSA" (AC at Count III VIII) is baseless and should be disregarded. *Ashcroft*, 556 U.S. at 678 (2009) (*citing Twombly*, 550 U.S. 544, 555).

### B. Dr. Oldham's FCA and VFATA Retaliation Claims Fail as a Matter of Law.

In Counts 1 and 2 of the AC, Dr. Oldham asserts claims of retaliation under the FCA and VFATA. AC at Counts 1 and 2. In making these allegations, Dr. Oldham fails to provide sufficient factual information that – even if taken as true – state a claim for relief that is plausible on its face, necessitating dismissal of these allegations.

To state a retaliation claim under 31 U.S.C. §3730(h), Dr. Oldham must allege facts which support a reasonable inference that: (1) he engaged in a protected activity; (2) Centra knew of the protected activity; and (3) that Centra took action against him in response. *United States ex rel. Grant. v. U.S. Airlines Inc.*, 912 F. 3d 190, 200 (2018). Section 3730(h) establishes "two kinds of protected activities . . . that which supports an FCA action against the employer alleging fraud on the government (whether brought by the government itself or in a qui tam suit on the government's behalf), and that which is part of an effort to stop an FCA violation." *Carlson v. DynCorp Int'l.*, 657 Fed. Appx. 168, 170 (4th Cir. 2016).

Similarly, to establish a retaliation claim under Va. Code § 8.01-216.8, "a plaintiff must plausibly allege that: (1) he engaged in a protected activity; (2) the employer knew about the activity; and (3) the employer retaliated against him in response." *Atchariyakornchai v. Frederick Cty. Sanitation Auth.*, 2018 WL 4714859, *3 (W.D.Va. 2018), (*citing Carlson*, 657 F. Appx. at 170). Again, "two types of actions to be protected: if the act (1) is taken in furtherance of an action under the [VFATA], or (2) represents other efforts to stop one or more [VFATA] violations. *Id*. (*citing Chapins v. Nw. Cmty. Servs. Bd.*, 243 F. Supp. 3d 739, 745 (4th Cir. 2017)).

Dr. Oldham's federal and state retaliation claims fail because he has not plausibly alleged that: (1) he engaged in protected activity, (2) Centra knew about the activity, and (3) Centra took adverse employment action against him as a result.

### 1. Dr. Oldham fails to sufficiently allege he engaged in protected activity.

Dr. Oldham's sole assertion of protected activity is that, during the course of a single isolated conversation on November 23, 2017, he allegedly told Ms. Kirby "that Centra was continuing a pattern of over-utilization and refusing to implement clinical pathways or effective case management procedures" and that he was preparing unspecified "complaints" which he hoped "would lead to the replacement of Mr. Tibbs, Mr. Baker, and Ms. Riggins."  AC at ¶ 85.

By his own admission, Dr. Oldham merely claims to have expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced preparing unspecified "complaints" on November 23, 2017.  *Id.*  Dr. Oldham never communicated or reported what he believed to be "concerns about Centra's illegal billing activities" until he sent "a December 5, 2017 email to the chair of the Centra Board of Directors, Walker Syndor" over a week after he was banned "from setting foot at any Centra facilities" on November 28, 2017.  *Id.* at ¶¶ 85-88.

Dr. Oldham fails to plead the first element of his retaliation claim because his single comment to Ms. Kirby is not protected activity.  To constitute protected activity, an act must be motivated by an objectively reasonable belief that the employer is violating or will soon violate the FCA, that the relator took action to stop the FCA violations and must have a nexus to an FCA violation.  *U.S. Airlines Inc.*, 912 F. 3d at 201-202.  "While conversations with employers that raise specific objections to fraud constitute protected activity, voicing only general complaints or concerns does not."  *United States ex rel. Branscome v. Blue Ridge Home Health Services, Inc.*, 2918 WL 1309734 (W.D. Va. 2018)(*citing United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F. 3d 724, 735  (4th Cir. 2010) and *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir 1999)).

Dr. Oldham's single comment to Ms. Kirby on November 23, 2017 is precisely the type of general comment that is not aimed to stop violations of the FCA. Virginia federal courts have repeatedly rejected claims of retaliation for failure to allege protected activity in regards to statements that come far closer that Dr. Oldham's to alleging fraud. *See, e.g.*, *Branscome*, 2918 WL 1309734 and *Scates v Shenandoah Memorial Hosp*, 2015 WL 6143457, *5 (W.D. Va 2015); *see also United States ex rel. Rector v. Bon Secours Richmond Health Corp.,* 2014 WL 1493568, at *13 (E.D. Va. 2014) (dismissing claim where alleged protected activity was complaint of "shoddy or suspicious business practices and possible Medicare and Medicaid violations.).

In *Branscome*, 2018 WL 1309734, *5-6, the plaintiff specifically referenced medical billing practices and provided specific instances regarding time spent with patients and services not being performed. Nevertheless, Judge Dillon still dismissed the FCA retaliation claim because "[n]otably absent from these descriptions are any report by Branscome of fraud or billing problems of any kind." *Id.* Conclusory and generalized allegations of dissatisfaction of patient treatment— or in Dr. Oldham's case frustration with management—is not protected activity. *Id.*

In *Scates v Shenandoah Memorial Hosp*, 2015 WL 6143457, *5 (W.D. Va 2015), the employee "expressed the inconsistencies between SMH's ultrasound billing practices and the CPT codes and inquired whether the billing code SMH was using to report ultrasounds was consistent with the number of ultrasounds they were actually performing." In dismissing the FCA retaliation claim, Judge Urbanski explained that "even under a broad interpretation of § 3730 (h), an internal report must raise some objective prospect than an employer is engaging in activities that would constitute a plausible violation of the FCA. *Id.* at *6. It is not sufficient for an employee to offer oblique complaints couched in terms of concerns or suggestions." *Id.*

Complaints that are sufficient to survive Rule 12(b)(6) motions allege "specific illegal, fraudulent conduct against the government". *Grant*, 912 F.3d at 202.  In *Grant*, the relator alleged specific conduct regarding coercion to not report problematic airplanes and direction to have problems disappear by having projects improperly signed off.  *Id.*

The Amended Complaint lacks any allegation that could plausibly show an effort on the part of Dr. Oldham to report or investigate fraud or other wrongful behavior.  He complained about his superiors, hospital administrators and employees – admittedly without justification at times - but never to reveal, investigate or suggest fraud on the part of Centra.  Dr. Oldham's generalized opinion regarding "cost savings" and treatment patterns and his unspecified "complaints" are not actions taken in furtherance of an FCA or VFATA suit nor do they constitute part of an effort to stop an FCA or VFATA violation.  *Id.*

Dr. Oldham did not have an objectively reasonable belief that Centra was committing fraud against the Government.  *See, e.g., Glynn v. EDO Corp.*, 710 E3d 209, 216 (4th Cir. 2013) ("we hold Glynn's purported investigation activities did not raise a distinct possibility of a viable FCA action and are not protected"); *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338 (4th Cir. 2010) (although Mann may have believed that the defendant's bid was fraudulent, his belief was not an objectively reasonable one).  Centra's clear innocence negates any reasonable basis for a fraud allegation.  There was not even a "distinct possibility" of a viable FCA action.  *See O'Hara v. NIKA Techs., Inc.*, 878 F.3d 470 (4th Cir. 2017);  United States ex rel. Lacy v. New Horizons, Inc., 2008 WL 4415648 (W.D. Okla. Sept. 25, 2008) (finding that alleged violation of regulations concerning patient care and safety were insufficient evidence of protected activity because they were violations of conditions of participation), aff'd, 348 F. App'x 421 (10th Cir. 2009).

Moreover, even if Dr. Oldham had a objectively reasonable belief that Centra was committing fraud against the Government (which he did not), his actions still could not be understood as acts in furtherance of a whistleblower claim. *See United States ex rel. Luckey v. Baxter Healthcare Corp.*, 183 F. 3d 730, 733 (7th Cir. 1999) (debates within a company about "optimal testing protocols cannot be equated to knowledge of litigation. . . . An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation. . . . Saber rattling is not protected conduct. Only investigation, testimony, and litigation are protected.").

Generic allegations of fraud or misconduct with no link to fraud against the federal government are insufficient. *See McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 515-16 (6th Cir. 2000) (plaintiff making internal reports, refusing to participate in the falsification of documents, and circulating an article describing a state investigation of alleged consumer and public utility fraud did not create a sufficient nexus to a qui tam complaint alleging fraud on the federal government and were not actions in furtherance of a qui tam suit under the FCA); *Blackburn v. HQM of Riverview Healthcare Ctr.*, 2010 WL 5393848 (W.D. Ky. Dec. 22, 2010) (employee's investigation of employer's noncompliance with federal or state regulations is insufficient to support a whistleblower claim); *United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421 (10th Cir. 2009) (plaintiff's contention that she was fired for reporting violations of patient care and safety regulations to state agency did not satisfy "in furtherance of an action" requirement); *Robertson v. Bell Helicopter, Inc.*, 32 F.3d 948, 951-752 (5th Cir. 1994) (holding that internal reporting of concerns about charges to the government by a contractor employee is not "protected activity" under the FCA where the employee never used the terms "illegal," "unlawful," or "qui tam action").

### 2. Dr. Oldham fails to sufficiently allege anyone at Centra knew that he acted in furtherance of a protected activity.

Dr. Oldham also fails to plead the second element of his retaliation claim, which requires him to establish that Centra knew that his acts were taken in furtherance of an FCA or VFATA suit or that his acts were taken as part of an effort to stop an ongoing FCA or VFATA violation. At most, Dr. Oldham alleges the possibility of future internal complaints by asserting that he expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced preparing unspecified "complaints" to Ms. Kirby on November 23, 2017. AC at ¶ 85. Even if his allegations are accepted as true, raising such generalized opinions and the possibility of future unspecified complaints is not sufficient to put Centra on notice for the purposes of 31 U.S.C. § 3730(h) or Va. Code § 8.01-216.8 as they do not constitute acts in furtherance of an FCA or VFATA suit nor do they constitute "efforts to stop" an FCA or VFATA violation. *See Atchariyakornchai*, 2018 U.S. Dist. LEXIS 168897, *9-10 (dismissing plaintiff's retaliation claims where plaintiff did no more than inform his supervisor of a lack of required water testing and alleged that falsification of testing-related documents aided in avoiding fines from a government oversight agency). It is an unreasonable and conclusory assertion, unsupported by further allegations, that Dr. Oldham would somehow put the Centra organization on notice for purposes of FCA and VFATA retaliation claims by simply expressing a generalized opinion and referencing the possibility of a future unspecified complaint.

Dr. Oldham must show that Centra knew he engaged in conduct that might lead to an FCA investigation. Courts evaluate notice from the employer's perspective and "turns on whether the employer . . . is on notice that litigation is a reasonable possibility." *U.S. ex rel. Parks v Alpharma, Inc.*, 493 Fed. Appx. 380, 389 (4th Cir. 2012) (plaintiff failed to show defendant "would have reasonably believed she was contemplating or acting in furtherance of an FCA action."). "Merely

grumbling to the employer about job dissatisfaction or regulatory violations" satisfies neither the protected activity or notice requirements. *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F. 3d 731, 743 (D.C. Cir. 1998).

*Scates* and *Branscome* are once again instructive. In *Scates*, Judge Urbanski observed that the plaintiff "alleges no facts to show that she mentioned her belief that [defendant] might be committing fraud, nor that anything illegal was taking place." 2015 WL 6143457, *7. "The Court cannot read in to the amended complaint facts that are not there. . . Based on these facts, [plaintiff] fails to state a plausible claim that [defendant] had notice." *Id.* at *8. In *Branscome*, Judge Dillon held that a generalized allegation about going to Court was likewise insufficient to put the defendant on notice. 2018 WL 1309734, *6. Similarly, Dr. Oldham merely claims to have expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced possible future unspecified "complaints" to an unknown audience. AC at ¶ 85. This is clearly insufficient.

Because Dr. Oldham offers no facts sufficient to support the "notice" prong of the test for establishing a retaliation claim under either 31 U.S.C. § 3730(h) or Va. Code § 8.01-216.8, his retaliation claims should be dismissed.

### 3. Dr. Oldham fails to sufficiently allege that he as retaliated against because of acts taken in furtherance of a protected activity.

Dr. Oldham also fails to plead the third element of is retaliation claim, which requires him to establish that he was "retaliated against" because of the acts he took in furtherance of an FCA or VFATA lawsuit or as part of an effort to stop violations of the FCA. *See Zahodnick*, 135 F.3d at 914; *Branscome*, 2018 WL 1309734, *6. Dr. Oldham's retaliation claims fail to meet this basic requirement.

15

Dr. Oldham addresses the alleged retaliation in only conclusory and cursory terms, stating that he was banned "from setting foot at any Centra facilities" on November 28, 2017. AC at ¶¶ 85-88. The essential allegation of a connection between protected acts and retaliation in response to protected acts does not exist in the AC. In fact, the AC confirms exactly the opposite.

By his own admission, Dr. Oldham merely claims to have expressed a generalized opinion regarding "cost savings" and treatment patterns and referenced preparing unspecified "complaints" on November 23, 2017. AC at ¶ 85. Dr. Oldham never communicated or reported what he believed to be "concerns about Centra's illegal billing activities" until he sent "a December 5, 2017 email to the chair of the Centra Board of Directors, Walker Syndor" over a week after he was banned "from setting foot at any Centra facilities" on November 28, 2017. *Id.* at ¶¶ 85-88. Ironically, it was Dr. Oldham who sent his December 5, 2017 email in retaliation for having been asked to leave Centra premises due to his threatening and inappropriate behavior. *Id.*

Dr. Oldham's empty assertions fail to meet the pleading requirements. Because there are no factual averments that causally link Dr. Oldham's alleged protected activities with any alleged adverse employment taken against him, his retaliation claims should be dismissed.

Finally, Dr. Oldham's retaliation claims fail because he has failed to allege a discriminatory act that affected the terms and conditions of his employment. Retaliation claims have no application where the defendant has no personal employment relationship with the plaintiff. *See El-Kahlil v. Tedeschi*, 2019 WL 2325610 (E.D. Mich. May 31, 2019) (dismissing retaliation claim based on finding no employment-like relationship between plaintiff and his podiatrist colleagues at Detroit medical center); *United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, 2017 WL 2653164 (M.D. Pa. June 20, 2017) (dismissing retaliation allegations against defendant with whom relator had no employment-like relationship).

16

C.     **Dr. Oldham's Breach of Contract Claims Fail as a Matter of Law.**

In Count 3, Dr. Oldham asserts a breach of contract claim. Dr. Oldham's breach of contract claim fails because he is neither a party to nor an intended beneficiary of and has no rights under the PSA between Centra and LHOC. See AC at ¶¶ 31, Ex. 1. The language of the PSA and applicable Virginia law confirms this. Dr. Oldham saying otherwise does not make it so.

1.     **Dr. Oldham fails to allege he is a third party beneficiary of the PSA.**

The Virginia Code provides:

> [I]f a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

Va. Code § 55–22

Case law interpreting Va. Code § 55–22 is equally clear: a non-party who might benefit from a contract between others may not, solely because of that, hold them liable for their breach of the contract. *Cf. Copenhaver v. Rogers*, 238 Va. 361, 368-9, 384 S.E.2d 593, 597 (1989); *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 230 (4th Cir. 2000) (benefit to the third party must be the "one overriding intent"). There is a "critical difference" between merely being a person or entity that will benefit from an agreement between other parties, and the very different situation in which a contract is entered into with the **express purpose** of conferring a benefit on a third party. *Envtl. Staffing Acquisition Corp. v. B & R Const. Mgmt., Inc.*, 725 S.E.2d 550, 555 (Va. 2012).

A non-party can sue for breach only when the breached condition was "placed in the contract for his direct benefit"; an incidental beneficiary has no right against the promisor or the promisee. *Cf. Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 555. A contract provision can benefit a third party, and a breach of it by a party might hurt a third party, but the dispositive question as

17

to whether liability to the third party will attach to a party is whether the third party is an intended beneficiary. *Cf. Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 553; *Bay Point Condominium Ass'n v. RML Corp.*, 54 Va. Cir. 422 (Norfolk 2001).

It must be alleged and shown that the plaintiffs were clearly intended as beneficiaries of the principal contract". *Copenhaver v. Rogers*, 384 S.E.2d 593, 595 (Va. 1989) (sustaining defendant's demurrer). A third person cannot maintain an action merely because that person would receive some benefit from its performance or because they are injured by a breach of the contract. *Bay Point Condo*, 54 Va. Cir. at 422. Dr. Oldham does not and cannot allege, as he must to hold Centra liable to him under its PSA with LHOC, that Centra and LHOC clearly intended him as a third-party beneficiary of the PSA—that the "overriding intent" of the PSA was to benefit him. Therefore, he fails to state a claim that Centra is liable to him for the alleged breach of the PSA.

## IV. CONCLUSION

For the foregoing reasons, Centra respectfully requests that the Court dismiss Dr. Oldham's Amended Complaint (Doc. 19) with prejudice.

Dated: October 8, 2020

Respectfully submitted,

CENTRA HEALTH, INC.

By: /s/ Joshua F. P. Long
      Of Counsel

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
J. Benjamin Rottenborn (VSB No. 84796)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
brottenborn@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com

wmilam@woodsrogers.com

*Counsel for Defendant Centra Health, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

                                     /s/ Joshua F. P. Long